```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>      -v-<br><br>ABLE MANAGEMENT ESTATES LLC and CARMEN VERAS,<br>            Defendants. | 24-cv-04354 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

By a bottom-line order dated December 17, 2024, this Court granted the motion of defendant Able Management Estates LLC ("Able) for summary judgment (applying in effect to co-defendant Carmen Veras as well) (Dkt. 22), and denied the cross-motion for summary judgment of plaintiff Mesa Underwriters Specialty Insurance Company ("Mesa") (Dkt. 23). This Memorandum Order explains the reasons for that ruling.

## BACKGROUND

Defendant Carmen Veras is a tenant in a multi-dwelling building owned and operated by co-defendant Able, located at 306 East 171st Street in the Bronx, New York. On July 24, 2022, Veras allegedly suffered personal injury in the bathroom of her apartment (the "premises") caused by a ceiling collapse. Plaintiff's Response to Defendant Able's Statement of Additional Undisputed

1

Material Facts and Counterstatement of Additional Undisputed Facts ¶¶ 1-7 (Dkt. 32) ("PSAUMF"). In an underlying action in the Bronx state court, Veras sued Able on or about May 10, 2023, for negligence in maintaining, repairing, and operating the premises in connection with her bathroom accident (the "underlying action"). Id. ¶¶ 4, 32. In the operative state-court complaint, Veras's only cause of action was for negligence. Id. ¶ 32.[1]

This insurance-coverage action was brought by Mesa, the insurer of Able and co-defendant in the underlying action. Able obtained a general and commercial insurance policy from Mesa, bearing a policy number MP0045003003605 (the "policy"), which was in effect on the date of Veras's accident. Plaintiff's Statement of Undisputed Material Facts ¶ 1 (Dkt. 25) ("PSUMF"). Under the terms of the policy, Mesa was obligated to defend Able, the policyholder, in any suit for damages arising from "bodily injury" or "property damage" in the maximum amount of $1,000,000 "per occurrence." Id. ¶¶ 1, 3. However, Section IV of the policy contained a limitation, capping the insurance coverage "per

---

[1] The bill of particulars alleges in pertinent parts that Veras's injury was caused by a host of acts or omissions on part of, inter alia, Able and its agents, including negligence; failure to repair the premises; creation of defective ceiling collapse condition; violation of "NYC building codes rules, regulations, laws, statutes, procedures, and guidelines;" nuisance that was permitted to exist "for unreasonable period of time;" failure to warn; etc. See Declaration of Max W. Gershweir ¶ 4, Ex. B (Dkt. 23-1) ("Gershweir Decl."). The bill of particulars was not signed by Veras. Id.

2

occurrence" at $100,000 in instances where the insured failed to comply with the following premises maintenance specifications:

> a. All buildings for which this policy provides coverage must adhere to all applicable building and life safety codes, health codes, ordinances, and laws; and,
>
> b. All buildings for which this policy provides coverage must obtain and maintain current certificates of occupancy and be deemed habitable by any governing authorities.

Id. ¶ 4. Once Able was served with the underlying action, it notified Mesa. PSAUMF ¶ 8. By a letter dated June 9, 2023, Mesa agreed to defend Able in the underlying action, subject to reservation of its rights, and obtained counsel for Able. Id. ¶ 9. The underlying action is still ongoing, and only limited discovery has taken place to date. Id. ¶ 18.

On March 16, 2024, Veras's counsel sent a letter to Able and Mesa, demanding in effect the full "per occurrence" insurance payout under the policy — $1,000,000 — to settle the case. Memorandum of Law in Support of Defendant Able Management Estate's Motion for Summary Judgment, at 2 (Dkt. 22) ("Able SMJ"). Not too long thereafter, on June 7, 2024, Mesa commenced this action, seeking a declaration that Mesa's duty to defend and indemnify Able in the underlying action is limited to $100,000 because "[i]f Able is found liable to Veras in the Underlying Action, its liability will arise from its failure to comply with codes, ordinances, and/or laws relating to the safety of the premises,

3

including but not limited to Administrative Code of the City of New York §§ 272005(a), 27-2017.3, and 27-2026[,]" thus triggering the coverage limitation in Section IV of the policy. Complaint ¶ 16 (Dkt. 1).

Defendants allege that plaintiff's requested declaratory relief is too speculative because Veras did not even allege violations of the applicable housing codes in the complaint filed in the underlying action. Able SMJ at 3. Mesa counters that if Able is found liable in the underlying action, it will have to be because Able violated the applicable housing code. This is so, Mesa argues, because under New York law, landlords have no duty to maintain leased premises, other than common areas, in good repair, and so, the only source of duty for landlords vis-à-vis the tenants of multi-dwelling buildings is derived from New York's statutory law. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, at 9 (Dkt. 24) ("Mesa SMJ") (citing Juarez v. Wavecrest Mgmt. Team, 88 N.Y.2d 628, 642-643 (1996)).

## LEGAL STANDARDS

1. <u>Motion for Summary judgment Under Federal Rule of Civil Procedure 56</u>

The Federal Rules of Civil Procedure provide that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is

4

'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding the motion, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. See Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

   2. Ripeness in Declaratory Action

   "Article III of the Constitution limits the 'judicial Power of the United States' to 'Cases' and 'Controversies.'" Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 91 (2d Cir. 2023) (quoting U.S. Const. art. III, §§ 1-2). The Declaratory Judgment Act ("DJA"), under which plaintiff brings this action, permits a federal court, "[i]n a case of actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Id. at 92 (quoting 28 U.S.C. § 2201(a)) (emphasis omitted and alterations added). The "critical question" is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)

5

As was the case here, it is common for insurers to file a declaratory action to determine the scope of their future obligations under the applicable insurance coverage contract. In fact, the Second Circuit has recognized that insurance coverage litigation "has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." Admiral Ins. Co., 57 F.4th at 93 (citation omitted). Nevertheless, "courts should focus on the practical likelihood that the contingencies will occur." Emps. Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271, 278 (2d Cir. 2008) (citation omitted) (alteration in text).

More generally, because the DJA "provides only that federal courts may declare the rights and other legal relations of an[] interested party seeking such declaration," courts retain "a broad grant of discretion . . . to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." Admiral Ins. Co., 57 F.4th at 96 (internal quotation marks and citation omitted); see also 28 U.S.C. § 2201(a). To that end, the Second Circuit recently clarified that the following guidelines should inform district courts' evaluation of discretion regarding jurisdiction under the DJA:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being

used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

Admiral Ins. Co., 57 F.4th at 96.

## DISCUSSION

Mesa seeks a declaration that its duty to defend and indemnify the suit brought by Veras against Able in the underlying action is extinguished once the costs incurred to Mesa reach $100,000. It is clear that the Court possesses subject matter jurisdiction to adjudicate this case. The dispute is one of "sufficient immediacy and reality," as evidenced by the filing of the underlying suit against Able by Veras and her demand letter later served on Mesa and Able to settle the lawsuit for $1,000,000. PSAUMF ¶ 20. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 127. Despite the contingency embedded in this action, the Court also finds that there is a "practical likelihood" that Able will incur liability in the underlying action, most obviously because Mesa has already incurred expenses in defending Able and because Veras demanded that Able and Mesa settle the action for $1,000,000. See PSAUMF ¶ 33; Admiral Ins. Co., 57 F.4th at 93-94.

Nevertheless, the Court finds that a declaration on plaintiff's scope of duty to indemnify would be inappropriate at

this time and could create a friction between this Court and the state court adjudicating the underlying action. It is true that "[a]t common law landlords had no duty to maintain leased premises, other than common areas, in good repair." Juarez, 88 N.Y.2d at 642-643. It does not follow, however, as plaintiff argues, that "multiple dwelling owner's liability for injury caused by hazardous conditions within an apartment is necessarily grounded on violating building safety codes[.]" Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment, at 4 (Dkt. 35)(emphasis omitted). Rather, the New York Court of Appeals has held that "[e]ven in the absence of statute, a common-law duty to repair defective conditions within the home may and often does arise from the contractual relationship between landlord and tenant." Rivera v. Nelson Realty, LLC, 7 N.Y.3d 530, 535 (2006); see also Chapman v. Silber, 97 N.Y.2d 9, 19-20 (2001). Additionally, a landlord may also assume liability for injuries that occur on premises leased to a tenant through a course of conduct. See Ritto v. Goldberg, 27 N.Y.2d 887, 889 (1970). Here, the underlying state court action is in the early stages, with only the deposition of Veras having taken place to date, and the facts bearing on the parties' contractual relationships or even the facts that led to the underlying incident have not yet been established. PSAUMF ¶ 18, 25. Veras did not clearly articulate the basis of Able's alleged liability in her state complaint, and the

bill of particulars likewise does not clearly articulate the source of duty of care owed by Able to Veras, although it mentions statutory and regulatory violations as one possibility. See Gershweir Decl. ¶ 4, Ex. B. Thus, holding that any judgment of liability against Able must arise from its statutory breach of duty would create a risk of inconsistent judgments between this and the state court. Moreover, also weighing against granting Mesa's requested relief is that the requested "declaration would in no way finalize the controversy or settle the underlying legal issues, as liability would still need to be resolved" in the underlying action. Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co., 685 F. Supp. 3d 187, 216 (S.D.N.Y. 2023).

Accordingly, the Court concludes that ruling on Mesa's scope of indemnification, in the absence of liability determination or substantial factual development in the underlying action is premature, contrary to the principles of judicial efficiency and economy, and poses a risk of inconsistent judgments. See Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-CV-8957 (RA), 2018 WL 1634135, at *5 (S.D.N.Y. Mar. 31, 2018) ("[C]ourts regularly require the existence of liability before exercising DJA discretion over indemnity issues.") (collecting cases); Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 261 (S.D.N.Y.), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., 548 F. App'x 716 (2d Cir. 2013) ("Courts are concerned about

becoming entrenched in a factual quagmire that has yet to be resolved in the underlying litigation."). As a result, the Court hereby grants the motion for summary judgment of defendant Able (also applying, in effect, to co-defendant Veras) and dismisses Mesa's complaint without prejudice. Correspondingly, the Court hereby denies Mesa's motion for summary judgment. The Clerk is directed to close Dkts. 22 and 23 and enter final judgment.

SO ORDERED.

Dated: New York, NY

  March 31, 2025      _____
                JED S. RAKOFF, U.S.D.J.